Argued and submitted October 19, 2004, affirmed February 16, 2005

ARTISAN LABORATORIES, INC.,
an Oregon corporation;
The Adobe Motel, Inc.,
an Oregon corporation;
Red Inc.,
an Oregon corporation;
and Cross-D-Ranches, Inc.,
an Oregon corporation;
and all other corporations, entities or
individuals similarly situated,
*Appellants,*

*v.*

SAIF CORPORATION,
an Oregon public corporation,
*Respondent.*

0204-03429; A120681

106 P3d 677

John A. DiLorenzo, Jr., argued the cause for appellants. With him on the opening brief were John F. McGrory, Jr., Aaron K. Stuckey, and Davis Wright Tremaine LLP and

Michael E. Farnell and Parsons Farnell & Grein LLP. On the reply brief was Jeffrey T. Lindberg.

Daniel J. Casey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiffs are Oregon employers who bought workers' compensation insurance from defendant, the State Accident Insurance Fund Corporation (SAIF). They assert that SAIF, in failing to distribute its surplus reserves in the form of dividends, violated a state law; that the law was incorporated into SAIF's contracts with policyholders; and that therefore SAIF breached those contracts. According to plaintiffs, although the law (and hence the contracts) provided that SAIF "in its discretion may" declare a dividend, SAIF's decision not to do so despite a large surplus was unlawful. The trial court granted SAIF's motion for summary judgment, denied plaintiffs' motion, and dismissed the complaint. We affirm.

SAIF is a statutorily created "independent public corporation" that sells workers' compensation insurance to employers. ORS 656.751(1). The funding source for SAIF is the Industrial Accident Fund (IAF), also created by statute; employer premiums flow into the IAF and SAIF's payments flow out of it. ORS 656.632. SAIF maintains some of the IAF as a "reserve" so that it can meet unexpected demands. From time to time, the amount of money held in reserve exceeds the amount "deemed actuarially necessary according to recognized insurance principles," thereby creating a surplus that SAIF "in its discretion may" return to policy-holding employers in the form of dividends. ORS 656.526(2).

In their complaint, plaintiffs alleged that, as a result of SAIF overcharging employers for premiums, the IAF contained a surplus of between $200 million and $700 million and that SAIF was obligated to declare a dividend and distribute that surplus to policy-holding employers.[1] Based on

---

[1] On appeal, plaintiffs insist that the question before the trial court was not whether SAIF was required to declare a dividend but whether SAIF was required to "exercise its discretion to declare a dividend." We understand plaintiffs to be asserting not that SAIF failed to exercise discretion, but that the outcome of SAIF's exercise of discretion—the decision not to declare a dividend—was unlawful. When plaintiffs now assert that SAIF was required to exercise its discretion to declare a dividend, they mean that SAIF was required to exercise its discretion in such a way as to result in the declaration of a dividend. Thus, the distinction they draw is meaningless. In any event, plaintiffs mischaracterize their own complaint; it alleged that "the statutory duty of SAIF to pay dividends to its policyholders is incorporated into the contracts of insurance between SAIF and its policyholders."

those allegations, plaintiffs asserted claims for breach of contract, breach of a covenant of good faith and fair dealing, breach of fiduciary duty, and money had and received. They sought damages and injunctive relief.

The parties filed cross-motions for summary judgment. Shortly thereafter, and before any discovery took place, the parties and the court agreed to focus the summary judgment adjudication on a single legal issue: whether plaintiffs had stated a legally viable claim. More specifically, the question that the parties and the court agreed that the court should decide was whether, assuming the existence of a surplus in the amount alleged in the complaint, SAIF had a legal obligation to declare a dividend for distribution to policyholding employers.

The trial court addressed the motions thus framed. In a brief letter opinion, the court stated:

"The court has considered the memoranda submitted, the cases discussed therein, and arguments of counsel and concludes as follows:

"1) To the extent that plaintiff has not abandoned a claim that the insurance premium rates charged employers were excessive, such claim is barred by the 'filed rate doctrine' and a failure to exhaust administrative remedies.

"2) Regarding any surplus that may exist beyond a determination of the total 'liability existing against the fund' and 'reserves deemed actuarially necessary according to recognized insurance principles' (ORS 656.526), there is no requirement that the State Accident Insurance Fund Corporation must return such sum to employers. The statute says 'may,' not 'shall.' To require the statute to otherwise operate would take legislative action, not judicial interpretation.

"Accordingly, plaintiffs' Motion for Summary Judgment is denied. Defendant's Motion for Summary Judgment is granted."

The court subsequently dismissed the action with prejudice and entered judgment for SAIF.

On appeal, plaintiffs acknowledge that they have abandoned their claim alleging excessive premium rates.

They now focus exclusively on their claims relating to SAIF"s failure to distribute dividends.[2] All those claims derive from a single premise: Under the circumstances alleged in the complaint, ORS 656.526 requires SAIF to declare a dividend for distribution to policy-holding employers. From that premise, plaintiffs reason that, because the obligations of parties to an insurance contract must be determined by reference to statutes governing and regulating such contracts, *Cambron v. North-West Ins. Co.*, 70 Or App 51, 54, 687 P2d 1132 (1984), *rev den*, 298 Or 470 (1985); *U.S. West Properties, Inc. v. AOI Compwise*, 156 Or App 411, 417, 965 P2d 467 (1998), *rev den*, 328 Or 365 (1999) a violation of ORS 656.526 is a breach of the contracts between SAIF and the policy-holding employers. In turn, the claims for breach of covenant of good faith and fair dealing, breach of fiduciary duty, and money had and received all depend on the asserted underlying breach of contract.

Thus, presuming that plaintiffs are correct that a statutory violation is also necessarily a breach of contract, all their claims rise or fall on the correctness of their theory that, under the circumstances alleged in the complaint—a surplus of between $200 million and $700 million—ORS 656.526 requires SAIF to declare a dividend. That statute provides:

"(1)  Periodically, the State Accident Insurance Fund Corporation shall determine the total liability existing against the Industrial Accident Fund.

"(2)  If, after the determination required by subsection (1) of this section, the State Accident Insurance Fund Corporation finds the Industrial Accident Fund, aside from the reserves deemed actuarially necessary according to recognized insurance principles, contains a surplus, the State Accident Insurance Fund Corporation *in its discretion* may, after providing for any payments to the state, taxes or other dispositions of surplus provided by law, declare a dividend to be paid to, or credited to the accounts of, employers who were insured by the State Accident Insurance Fund

---

[2] SAIF argues that, because plaintiffs' complaint asserts that the failure to distribute dividends resulted from overcharging for premiums, plaintiffs' decision to abandon the overcharge claim is fatal to the failure to distribute claim because the latter depended on the former. We reject that argument; the two claims are independent.

Corporation during all or part of the period for which the dividend is declared. Any dividend so declared shall give due consideration to the solvency of the Industrial Accident Fund, not be unfairly discriminatory and not be promised in advance of such declaration."

(Emphasis added.) The obvious obstacle to plaintiffs' position that the statute requires SAIF to distribute surplus reserves once they reach a certain level is that the statute plainly announces the exact opposite: In declaring that SAIF "in its discretion may" declare a dividend in certain circumstances, the statute makes distribution optional once those circumstances exist. "May" is permissive, not mandatory, and, in the context of the phrase "SAIF in its discretion may declare a dividend," "discretion" denotes the power or right to choose among lawful alternatives. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000); *Webster's Third New Int'l Dictionary* 647 (unabridged ed 2002); *Black's Law Dictionary* 479 (7th ed 1999). The statute, in other words, imposes limitations on when SAIF may declare a dividend (only when the reserves contain a sufficient surplus and other mandatory payments have been made), but it imposes no limitations on when it may choose not to do so.

Plaintiffs' position is therefore untenable. It appears to stem from an erroneous assumption: that "abuse of discretion" occurs when a person or entity performs an act that it is otherwise authorized to perform (that is, an act that, *in its discretion*, it may perform) but does so in a manner that is, under the circumstances, unwise, imprudent, immoderate, or contrary to good public policy (that is, is abusive). That definition would be plausible in the context of evaluating whether some actor performed a permissible act *with* discretion. It cannot apply in the context of evaluating whether some act is *in* or *at* the discretion of the actor.[3] In those circumstances, as noted above, an "abuse of discretion" occurs when the actor's decision is not within the range of legally permissible choices. *Rogers*, 330 Or at 312. Although *Rogers* dealt with a trial court's abuse of discretion in evidentiary

---

[3] Compare the use of the word "discretion" in two sentences: "Smith may, *in her discretion*, invest in a mutual fund. Whether she chooses to do so or not, she should choose *with discretion*." The former sentence confers choice; the latter cautions prudence.

rulings, we have applied the same definition in a variety of contexts,[4] and we perceive no reason why it would not apply to the review of SAIF's action pursuant to legislative mandate. That being the case, we hold that SAIF's decision to refrain from declaring dividends was not an abuse of discretion, which is simply another way of saying that it was not unlawful. The decision was one of the alternatives that the legislature explicitly authorized.

Additional considerations lead us to the same conclusion. Before 1965, ORS 656.526 contained language that operated as plaintiffs argue the current language does: It required SAIF to declare a dividend when, in addition to other requirements, the surplus exceeded $7,500,000. The 1965 Legislative Assembly enacted the following amendment (deleted language in italics, new language in boldface):

"(1)  Annually on July 1, the [*commission*] **department** shall determine the total liability existing against the Industrial Accident Fund.

"(2)  If, after the determination required by subsection (1) of this section, the [*commission*] **department** finds the Industrial Accident Fund, aside from the reserves [*in the Segregated Accident Fund, moneys in the Emergency Fund, the Catastrophe, Second Injury, Major Injury and Rehabilitative Reserves, and in any other reserves deemed necessary, is sufficient to cover all contingent liability, as established by recognized actuarial insurance principles, has a surplus in excess of $7,500,000, it shall determine the amount of that excess and place it to the credit of all eligible employers who have contributed to the* Industrial Accident Fund *during the preceding 12 months under ORS 656.502 to ORS 656.524*] **deemed actuarially necessary, contains a surplus, the department, in its discretion may declare a dividend to be paid to, or credited to the accounts of, contributing employers according to a uniform formula promulgated by the department and filed with the Secretary of State.**"

---

[4] For example: in reviewing the denial of a request for continuance to obtain new counsel, *State v. Hug*, 186 Or App 569, 64 P3d 1173, *rev den*, 335 Or 510 (2003); in reviewing a motion to set aside a judgment under ORCP 71 B, *Owens and Owens*, 182 Or App 473, 49 P3d 111 (2002); in reviewing the denial of a motion for set-over, *State ex rel Juv. Dept. v. Garcia*, 180 Or App 279, 44 P3d 591 (2002).

Or Laws 1965, ch 285, § 72. The current language, then, reflects a deliberate legislative choice to eliminate a requirement that SAIF declare a dividend based on the size of the surplus—the precise requirement plaintiffs would have us read into the statute now.

*Eckles v. State of Oregon*, 306 Or 380, 760 P2d 846 (1988), *appeal dismissed*, 490 US 1032 (1989), lends additional support. In that case, an employer insured by SAIF brought an action alleging that, in passing legislation transferring $81 million from the IAF to the General Fund (Or Laws 1982, ch 2 (Special Session 3), hereafter the "Transfer Act"), the Legislative Assembly violated Article I, section 21, of the Oregon Constitution, by "impairing the obligation of contracts," and also breached a contract between SAIF and its insureds. *Id.* at 382, 387. The court held that some provisions of the legislation violated the constitution and some caused a breach of contract. *Id.* at 403. More importantly for purposes of this case, the court denied the plaintiff any damages for the breach, reasoning that, even though the state had unlawfully taken money from the IAF, the plaintiff had produced no evidence that doing so harmed him. *Id.* at 402. To prove such harm, the plaintiff would have had to prove, not only that the state was required to return the money to the IAF, but also that SAIF would have chosen to use the money for dividends. Although (the court noted) the plaintiff could possibly have proved that SAIF would have declared a dividend, that fact could not be presumed, because the statutes themselves did not compel SAIF to do so. That option was "in the 'discretion' of SAIF." *Id.* at 402 n 24 (quoting ORS 656.526). In reaching that conclusion, the court implicitly rejected part of Chief Justice Peterson's concurring and dissenting opinion in which he argued that ORS 656.526(2) did, in fact, *require* SAIF to distribute "an unreasonably large surplus." *Id.* at 406 (Peterson, C. J., concurring in part and dissenting in part).

The Supreme Court restated the same conclusion in *Alsea Veneer, Inc. v. State of Oregon*, 318 Or 33, 862 P2d 95 (1993). Having determined that the legislature unlawfully took $81 million from the IAF—an amount the legislature had declared to be "inappropriate and contrary to public policy," Transfer Act, § 1(8)—the court held that the money had

to be returned to the IAF but that the trial court, on remand, could not itself determine how much of that "inappropriate" surplus the plaintiffs were entitled to receive; rather, the trial court had to determine how much of it *SAIF would have chosen to return* to plaintiffs as dividends. 318 Or at 45. Merely because money is in the IAF, the court noted, "[t]hat may or may not mean that dividends will be distributed to some or all classes of employers insured with SAIF." *Id.* As the court pointed out,

> "IAF funds are administered by SAIF for a number of purposes, only one of which is the declaration of dividends. We cannot here decide what precise uses SAIF would have put the $81 million to, had the money not been taken. It might have been used for one or a combination of the following: for refunds to participating employers/insureds, ORS 656.642(2)(b); for augmenting reserve accounts, ORS 656.635(1), 656.640; for loss payments, rehabilitation, safety programs, or SAIF administration; for dividends to SAIF employers/insureds; for reduction of future premiums; or for any other workers' compensation purpose. *See, e.g.*, ORS 656.508(2) (SAIF, annually, may 'readjust, increase or decrease the premium rates'). The point is that the employers were a party to a contract with the state, and the state's taking of the $81 million deprived them of some or all of the multiple benefits that the $81 million would have been put to, had the state not taken the money. Perhaps SAIF would have paid a greater dividend to some of or all the employers here represented. Then again, it might not have."

*Id.* at 43. The Supreme Court, then, has twice held that SAIF has no obligation to distribute its surplus to policy-holding employers, even when the legislature has deemed the size of that surplus to be "inappropriate and contrary to public policy."

Plaintiffs raise a number of arguments in support of their theory that the trial court erred in concluding that, "[r]egarding any surplus that may exist, * * * there is no requirement that [SAIF] must return such sum to employers." None of the arguments is persuasive.

First, plaintiffs contend repeatedly that the trial court's ruling gives SAIF unreviewable, "unfettered discretion" in deciding whether to declare a dividend and that, if

the ruling stands, SAIF will have *carte blanche* to use the surplus "for fraud, bad faith, * * * or improper purpose[s]" such as "illegal electioneering by a state agency, unlawful 'grass roots' lobbying by a state agency, predatory practices in the marketplace, or undisclosed excessive severance payments to state employees." That argument fundamentally mischaracterizes the trial court's ruling. The court decided only that SAIF's discretion *not to spend* the surplus is "unfettered" except by legislation, regardless of how large it is; the court decided nothing at all about SAIF's discretion *to misspend* the surplus, which discretion is, of course, explicitly limited by ORS 656.526 itself and numerous other statutes, *e.g.,* ORS 656.634 (specifying uses to which fund may be put).

Second, plaintiffs rely on a provision that formed part of the policy statement contained in the Transfer Act taking $81 million from the IAF for use in the General Fund. That provision stated:

"As an independent public corporation, it is inappropriate and contrary to public policy for the State Accident Insurance Fund Corporation to continue to maintain a surplus so far exceeding the amount necessary for its statutory purposes."

Transfer Act, § 1(8). For several reasons, that provision does not help plaintiffs. As noted above, the Supreme Court held that, despite the language, SAIF was not required to use the $81 million to pay a dividend to employers. *Alsea Veneer, Inc.,* 318 Or at 45. Further, the statement is an expression of policy as opposed to an operational mandate. Had the legislature intended actually to compel SAIF to act "appropriately," it had (and has) the authority to do so. ORS 656.634(2) (legislature may "direct * * * the disposition of any surplus" in IAF). In short, the provision might, at most, indicate that the legislature would believe SAIF's decision to be unwise; that does not make it unlawful. And finally, the entire statutory scheme of which the quoted language was a part—the plan to take money from the IAF and give it to the General Fund— was ultimately declared unlawful. *Eckles,* 306 Or 380; *Alsea Veneer, Inc.,* 318 Or 33.

Third, plaintiffs point to ORS 656.642. That statute creates "a revolving fund known as the Emergency Fund"

and specifies that it may be used, among other purposes, "[t]o distribute any surplus to employers as required by ORS 656.526." ORS 656.642(2)(c). However, the language on which plaintiffs rely—"as required by ORS 656.526"—was passed by the Legislative Assembly in 1935. Or Laws 1935, ch 419, § 1. At that time, the statute that eventually evolved into ORS 656.526 did, in fact, require SAIF to declare a dividend for employers when the surplus reached $500,000. Or Laws 1933, ch 352, § 5. When the legislature amended that statute to eliminate the dividend requirement and confer discretion on SAIF to declare a dividend or not, the emergency fund statute was not amended to conform. We decline to construe ORS 656.526 contrary to the plain meaning of its text because of an oblique reference in a related statute that in all probability results from a codification oversight.

Fourth and finally, plaintiffs cite Chief Justice Peterson's argument in his concurring and dissenting opinion in *Eckles*, where he contended that, because SAIF resembled a mutual insurance company, ORS 656.526(2) should be interpreted so as to require SAIF to issue a dividend when the amount of surplus became excessive. *Eckles*, 306 Or at 406 (Peterson, C. J., concurring in part and dissenting in part). As discussed above, the Supreme Court rejected that view. Chief Justice Peterson himself subsequently authored *Alsea Veneer*, an opinion declaring that, on remand, the trial court's duty in determining whether plaintiffs deserved damages depended on the court's determination of how SAIF, in its discretion, would have disposed of its surplus. In any event, we are not at liberty to adopt an interpretation that the Supreme Court majority rejected.

In sum, the trial court's decision comports with the plain language of ORS 656.526, with its context (including earlier versions), and with Supreme Court interpretations of it. Plaintiffs' arguments are based on misapprehensions of the scope of trial court's ruling, an inoperative policy statement in a discredited statute, and a dissenting opinion in a Supreme Court case.

Affirmed.