Argued and submitted October 18, 2007, affirmed February 13, 2008

In the Matter of K. J. B.,
a Minor Child.

STATE ex rel DEPARTMENT OF HUMAN SERVICES,
*Respondent,*

*v.*

S. P. B.,
*Appellant.*

Washington County Circuit Court
J050264

Petition Number
01J050264M

A135272

178 P3d 307

Susan D. Isaacs argued the cause and filed the brief for appellant.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

The Department of Human Services (DHS) filed a petition in juvenile court asking the court to make "an investigation * * * of the circumstances concerning" father's daughter and "to make such order or orders as are appropriate."[1] The court dismissed the petition without prejudice. On appeal, father argues that the dismissal should have been *with* prejudice, because the dismissal without prejudice needlessly prolongs the period of uncertainty regarding child's permanent placement. The state responds that this court has no jurisdiction to adjudicate father's appeal because father was not adversely affected by the court's judgment, a prerequisite for appeal under ORS 419A.200(1), set out below. The state also maintains that, even if father can appeal the judgment, we should nonetheless reject his argument because the juvenile court's dismissal without prejudice was not an abuse of its discretion. We conclude on *de novo* review, ORS 419A.200(6), that father can appeal the judgment, but we also conclude that father's appeal is not meritorious. We therefore affirm.

On June 27, 2005, DHS filed a petition asking the juvenile court to take dependency jurisdiction over father's daughter because her "condition or circumstances [were] such as to endanger" her welfare. ORS 419B.100(1)(c). The petition contained allegations regarding the child's mother and father. The mother is not a party to this case. Regarding father, the petition alleged that:

"G. The father, whose whereabouts are unknown, has had no contact with the child, has not contributed to the child's support and has evidenced no interest in gaining custody of the child.

"H. The father is unable to legally protect said child."

The juvenile court issued a "shelter/preliminary hearing order" taking temporary jurisdiction over the child. The permanent plan, however, was and remains to return the child to father.

---

[1] The juvenile court previously had assumed jurisdiction over father's child pursuant to an earlier petition.

Within weeks of the original petition, DHS filed an amended petition reiterating the previous allegations and including allegations that father's criminal history endangered the child's welfare:

"The father has extensive criminal history including assaultive behaviors to include: 06/90, Burglary; 09/90, Grand Theft, Battery; 10/90, additional charge of Battery (from the 9/90 incident); 11/90, Burglary I; 2/92, Revocation of Probation; 3/92, Burglary I, Possession of a Controlled Substance; 04/93, Parole Violation; 12/93, Parole Violation; 11/94, Possession of a Controlled Substance, Parole Violation; 06/95, Possession of a Controlled Substance with Intent to Sell; 10/95, Parole Violation; 10/96, Possession of a Controlled Substance with Intent to Sell; 11/96, Possession of a Controlled Substance; 07/99, Driving while Under the Influence of Intoxicants including Alcohol and Drugs; 05/05, Pending charge of Misdemeanor Assault and Communicating Threats, which places said child at risk for harm."

The court held a hearing on the amended petition, and father admitted the allegations. The court made the child a ward of the court and granted guardianship and legal custody to DHS.

In December 2005, a review hearing was held, and the child was placed with an aunt in California, where father was also living. At a subsequent permanency hearing six months later, the juvenile court found that father had made "minimally" sufficient progress toward the plan of reunification, and the child was moved to placement with a different relative.

After another six months, in December 2006, DHS filed another amended petition in response to an allegation that, approximately 20 years earlier, when he was a teenager, father had sexually abused two of his sisters. The petition alleged, "The father has a history of engaging in inappropriate sexual contact with minor females, which places said child at risk of harm." Father denied that he had committed the inappropriate sexual contact.

That same month, the court held another permanency hearing. The court found at that time that father was

making sufficient progress and continued the plan of working toward reunifying the child with him. At yet another hearing the next month, father again denied the allegation of inappropriate sexual contact.

Finally, on February 1, 2007, the court held a contested jurisdiction hearing on the December 2006 amended petition. At that hearing, the court granted the state's motion to continue the hearing until March 14, 2007, in order to allow the state time to contact and arrange for the testimony of the witnesses from California who had allegedly been sexually abused by father. However, neither DHS nor the district attorney's office in Washington County had the resources to bring the witnesses from California. For that reason, the state moved to dismiss the petition without prejudice. Father argued that the petition should be dismissed with prejudice because nothing indicated that the state would ever be able to bring the witnesses from California. The court granted the state's motion to dismiss without prejudice. This appeal ensued.

■ At oral argument, the state argued that, under ORS 419A.200(1), father may not appeal the juvenile court's judgment.[2] That statute provides, in part:

"[A]ny person or entity, including, but not limited to, a party to a juvenile court proceeding under ORS 419B.875(1) or 419C.285(1), whose rights or duties are adversely affected by a judgment of the juvenile court may appeal therefrom."

We have examined the meaning of "adversely affected by a judgment of the juvenile court" under this statute and its predecessors in several cases. In *State ex rel Juv. Dept. v. Nagle*, 36 Or App 237, 584 P2d 338 (1978), we addressed the "adversely affected" element of *former* ORS 419.561(1), *repealed by* Or Laws 1993, ch 33, § 373, a precursor to ORS 419A.200(1). In that case, the father appealed from an order in a review hearing that did nothing more than maintain the status quo:

---

[2] Although the state did not raise this issue in its brief, we address it because we are required to consider whether we have jurisdiction in every appeal, on our own if necessary. *Berger Farms v. First Interstate Bank*, 148 Or App 33, 36 n 2, 939 P2d 64 (1997), *rev'd on other grounds*, 330 Or 16, 995 P2d 1159 (2000).

"The order merely continues the existing placement under the wardship. Except for form, it is more of a commemorative comment than an order. It makes no new or additional disposition. * * * *No right of the appellant is diminished; no duty enlarged.* * * * Therefore, there is no legal event with appellate significance. There was merely a supervisory look at an ongoing wardship with no substantial change ordered.

"* * * [W]e do not hold that all acts of the juvenile court after the initial creation of wardship are insulated from appellate scrutiny. Rather, we hold only that where there is no substantial change in the nature or degree of the conditions relating to the wardship or *where a right or duty is not affected by a ruling on a motion, there is no appealable order.*"

*Id.* at 240-41 (emphases added).

*State ex rel Juv. Dept. v. Black*, 101 Or App 626, 792 P2d 1225 (1990), provides an example of a situation in which the right of an appellant was "diminished" or "affected," thereby making the order appealable. The father in that case had been ordered by the juvenile court to participate in an incest treatment program before he could begin visiting his child. The father denied the incest and, during the hearing, requested that the court modify its order; according to the father, all available incest treatment programs required him to admit to incestuous conduct, which he refused to do. The court rejected the father's request and ordered that all of the existing orders and conditions remain in effect. The father appealed. Rejecting the state's argument, based on *Nagle*, that the father could not appeal the order, this court held:

"This case is different, because father sought and was denied affirmative relief. * * * [H]e asked the court to modify the original dispositional order to state expressly that he need not complete an incest treatment program, unless it was one that did not require him to confess to a crime. The court's order effectively denied father's request for a modification. Accordingly, *Nagle* does not require dismissal. The order is appealable, and we turn to the merits."

*Black*, 101 Or App at 629.

■        In this case, by requesting that the court dismiss the petition with prejudice, father sought affirmative relief. The court's order dismissing the petition *without* prejudice exposes father to the possibility of having to relitigate the sex abuse allegation that was dismissed. Thus it denied father the affirmative relief that he sought. We therefore conclude that he was adversely affected by the order and may bring this appeal.

■■        The decision whether to dismiss a petition with or without prejudice is within the discretion of the trial court, and we will reverse only if the trial court's decision was an abuse of that discretion. *Bernard v. Gary J. Lekas, P.C.*, 124 Or App 416, 418, 862 P2d 564 (1993). As the Supreme Court noted almost 30 years ago, "the term 'abuse of discretion' has no hard and fast meaning." *Far West Landscaping v. Modern Merchandising*, 287 Or 653, 664, 601 P2d 1237 (1979). An older formulation, frequently repeated by this court (although not by the Supreme Court), is that a court abuses its discretion when its decision is clearly unjustified by, and clearly against, reason and evidence. *Casciato v. Oregon Liquor Control Com.*, 181 Or 707, 717, 185 P2d 246 (1947); *Forsi v. Hildahl*, 194 Or App 648, 652, 96 P3d 852 (2004), *rev den*, 338 Or 124 (2005). More recently, the Supreme Court has held that a trial court abuses its discretion if it makes a decision that is not within the range of legally permissible outcomes. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). We have now adopted the position that both formulations may be correct; a decision that is clearly against reason and evidence may be, for that reason, outside the range of legally permissible outcomes. *State ex rel Juv. Dept. v. D. J.*, 215 Or App 146, 155, 168 P3d 798 (2007).[3]

        In the present case, father does not contend that the court's decision to dismiss without prejudice is not within its lawful powers, and we are aware of no authority that would

---

[3] It may be that the *Rogers* formulation applies when a statute or other source of law explicitly provides the court with finite alternates, all of which are lawful, *see, e.g.*, *Artisian Laboratories, Inc. v. SAIF*, 197 Or App 580, 585-86, 106 P3d 677, *rev den*, 339 Or 66 (2005), while the "beyond reason" formulation applies where the court's discretion is more open ended. We need not address that possibility here, however, because we conclude that the court's ruling was both legally permissible and not clearly against the evidence and reason.

support such a contention. Father offers two reasons why the court's decision to dismiss the petition without prejudice was nonetheless an abuse of discretion. Neither is persuasive. He first relies on ORS 419B.340(1), which requires the court to determine whether DHS has made reasonable efforts to prevent the need for removal of the ward from the home. Thoroughly investigating the sexual misconduct allegations, according to father, is such an effort, and DHS has not done so. However, ORS 419B.340(1) requires judicial determination of agency efforts only in disposition orders: "If the court awards custody to [DHS], the court shall include in the disposition order a determination whether the department has made reasonable efforts * * *." Because father is appealing a contested jurisdictional petition and not a disposition order, ORS 419B.340(1) is not relevant. Nor does ORS 419B.340 itself include any kind of mechanism to enforce the requirement that DHS make reasonable efforts.

■ Second, father generally contends that dismissal without prejudice allows DHS to postpone indefinitely his reunification with his daughter. That argument is not without force. Although there is no evidence in the record to suggest that the state's inability to arrange for the appearance of key witnesses regarding the sexual misconduct allegations resulted from a desire to delay the process or some other improper motive, nor will we speculate about what DHS might do in the future, we agree that DHS cannot prevent reunification indefinitely. Such a course of action would raise serious questions under the Due Process Clause. At this time, that has not occurred. The permanency plan remains to return the child to father. That process is governed by the timelines in ORS chapter 419B. *See, e.g.,* ORS 419B.470; ORS 419B.498. We therefore conclude that the court did not abuse its discretion in dismissing the petition without prejudice.

Affirmed.