201 P.3d 930 (2009)
225 Or. App. 477
In the Matter of E. K., a Minor Child.
STATE ex rel JUVENILE DEPARTMENT OF JOSEPHINE COUNTY, Appellant,
v.
G.A.K. and A.M.F., Respondents.
In the Matter of R.A.K., a Minor Child.
State ex rel Juvenile Department of Josephine County, Appellant,
v.
G.A.K. and A.M.F., Respondents.
A139303 (Control), A139305.
Court of Appeals of Oregon.
Argued and Submitted December 4, 2008.
Decided January 28, 2009.
*931 Laura S. Anderson, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Megan L. Jacquot argued the cause and filed the brief for respondent G.A.K.
Shannon L. Flowers, Deputy Public Defender, argued the cause for respondent A.M.F. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.
Before HASELTON, Presiding Judge, and ROSENBLUM, Judge, and SERCOMBE, Judge.
ROSENBLUM, J.
In these consolidated cases, the state appeals from judgments dismissing its petitions for dependency jurisdiction over the parties' children, R and E.[1] ORS 419A.200(1). The state argues that the trial court erred in (1) finding that the state had committed discovery violations under ORS 419B.881, (2) precluding the admission of evidence as sanctions for those alleged violations, and (3) dismissing the state's petitions with prejudice. We conclude that the trial court abused its discretion in ordering that the evidence be excluded. Accordingly, we reverse and remand.
This appeal involves petitions for dependency jurisdiction, ORS 419B.100(1)(c), filed by the Department of Human Services (DHS) on April 4, 2008. DHS alleged that R had been sexually abused by father on February 26, 2007, that mother had failed to protect her from father, and that both children *932 were at risk of harm as a result.[2] On May 19, 2008, DHS amended those petitions, adding allegations that mother was aware of the allegations of sexual abuse against father and had done nothing to assert custody or otherwise take steps to prevent father from having access to the children.
A jurisdictional hearing was held on the petitions on May 29 and 30, 2008. After the court denied the state's motion to continue the hearing based on the unavailability of one of its witnesses, mother and father assertedfor the first timethat the state had failed to timely disclose information and material within its possession or under its control in violation of ORS 419B.881, specifically: (1) progress notes taken by Jones, R's therapist, reflecting R's disclosure of sexual abuse; (2) an audio-video recording of a forensic interview of R conducted by Dixon of the Jackson County Child Advocacy Center (the DVD): (3) Dixon's written assessment of that interview; and (4) a report of the interview made by Daniels, a police detective who witnessed the interview.
At the hearing, the parties' attorneys made the following arguments with respect to those allegations. First, mother's attorney stated that she was told in November 2007 that the parents would get copies of Jones's notes of her therapy sessions with R during which R had begun to make disclosures relating to the alleged sexual abuse. She also stated that she was subsequently told a number of times by the assistant attorney general representing DHS on the 2007 petitions that he had instructed DHS to get the notes and turn them over to the parties. Although the parties received some notes in late February or early March, mother represented that she did not receive Jones's notes for the period of February 6 through May 14, 2008, until May 22, 2008, a week before the hearing. Father's attorney joined in mother's argument and added that father had been prejudiced by the delayed disclosure of Jones's notes because it prevented an expert from evaluating the notes in time for the hearing.
Next, with respect to the DVD, the parties agreed that they had been made aware of the existence of the DVD as of April 4, 2008.[3] Father's attorney stated at the hearing that he had requested a copy of the DVD on May 7, 2008, but was told by DHS that it was his responsibility to get it from law enforcement or from the child advocacy center. He did not view the DVD until the morning of the hearing; apparently, mother's attorney still had not seen it by the time of the hearing.
The final issue concerned the reports of the interview prepared by Dixon and Daniels. Mother's attorney stated that she did not receive Daniels's report until May 22, although it was dated March 13,[4] and that she did not receive Dixon's assessment until the day before the hearing, although DHS clearly had it at least by April 8.
Based on those alleged violations, mother and father moved to exclude the DVD, as well as the testimony of Jones, Dixon, and Daniels, under ORS 419B.881(9) (set out below).
*933 The state countered that disclosure had been timely, given the confidentiality issues that had to be addressed and considering that the appropriate starting point for measuring compliance with ORS 419B.881 was April 4, 2008, the filing date of the 2008 petitions. The state further argued that mother and father could have filed their own motion to compel discovery, not "anything out of the ordinary" in cases involving alleged sexual abuse, if they were concerned that discovery was not being provided. The state also indicated that the normal process in the county for obtaining a recording of an interview for purposes of expert review, which, as experienced counsel, mother's and father's attorneys should have been aware of, is to seek a protective order. Otherwise, the state argued, DHS appropriately advised father's attorney where to make arrangements to view the DVD. According to the state, that the parties chose not to do so should not be held against the state. Finally, the state argued that, even if the court were to find a violation, the extreme remedy of preclusion was unwarranted, given that there had been no motion to compel or other "formal accusation" of discovery violations and given the importance of the evidence in evaluating whether there had been a credible disclosure of sexual abuse.
Counsel for the children also argued that other, less extreme remedies were available and that, under the circumstances, granting a continuance to give the parties time to review the material was the more appropriate remedy. The children's attorney noted that it was disingenuous for the parents to object to a setover (as they had with respect to the state's earlier motion for a continuance), yet at the same time argue that "we want evidence kept out because we haven't had time to go over it with our clients."
The court determined that the state had failed to comply with ORS 419B.881 in each of the four particulars alleged by mother and father. Perceiving a "pattern of delay" on the part of DHS, the court also determined that the appropriate sanction for those violations was preclusion of the witnesses' testimony and exclusion of the recording.[5] *934 ORS 419B.881(9)(c), (d). The court found that the lesser sanction of granting a continuance was not warranted, because the parties did not ask for it and "to do so would be to encourage DHS to wait until the last minute, then provide information, and force the parents into a continuance, which DHS wants all along." The court also declined to order inspection of the material, reasoning that doing so would not afford mother and father time to review the material and engage experts if they wished.
When the hearing continued the following day, the state first made an offer of proof as to the excluded evidence (for purposes of appeal); it then continued to present the remainder of its case. At the close of the state's evidence, mother and father moved to dismiss with prejudice, arguing that the state had failed to prove, by a preponderance of the evidence, any of the allegations in the petitions. The court agreed and entered a judgment dismissing the petitions with prejudice. The state now appeals.
ORS 419B.881(1) requires each party to a jurisdictional proceeding under ORS 419B.100including the stateto disclose to each other party certain information and material "within the possession or under the control of the party." Material required to be disclosed includes "any relevant written or recorded statements or memoranda of any oral statements" of persons the party intends to call as witnesses, ORS 419B.881(1)(a); "[a]ny written or recorded statements or memoranda of any oral statements made * * * by the child to any other party or agent for any other party," ORS 419B.881(1)(b); "[a]ny reports or statements of experts who will be called as witnesses, including the results of any physical or mental examinations * * * that the party intends to offer in evidence at the hearing," ORS 419B.881(1)(c); and "[a]ny * * * documents or photographs that the party intends to offer in evidence at the hearing," ORS 419B.881(1)(d). As relevant to this case, disclosure must be made "as soon as practicable" and no later than 30 days after the petition alleging jurisdiction has been filed. ORS 419B.881(2)(a)(A). Additional discoverable information that the party finds either before or during the hearing must be disclosed "promptly." ORS 419B.881(3). The court may supervise the discovery process "to the extent necessary to insure that it proceeds properly and expeditiously." ORS 419B.881(2)(b).
Here, the parties vigorously dispute whether the state violated the statute; for example, they disagree as to whether (or when) certain of the items in question came into DHS's "possession" or under its "control" and the timing of other disclosures. A detailed discussion of that dispute, however, would not benefit the bench, bar, or public, because, even assuming that DHS committed *935 one or more discovery violations as found by the court, we conclude on this record that the court abused its discretion in ordering exclusion of the evidence as a remedy.
ORS 419B.881(9) governs the court's authority to impose sanctions for violations of the statute. It provides:
"Upon being notified of any breach of a duty to disclose material or information, the court may:
"(a) Order the violating party to permit inspection of the material;
"(b) Grant a continuance;
"(c) Refuse to permit the witness to testify;
"(d) Refuse to receive in evidence the material that was not disclosed; or
"(e) Enter such other order as the court considers appropriate."
Thus, under the plain language of the statute, i.e., the court "may" (emphasis added), it is properly within the discretion of the juvenile court to determine the sanction, if any, to be imposed for breach of the duty to disclose. We review that determination for an abuse of discretion. See State ex rel SOSCF v. Williams, 168 Or.App. 538, 540 n. 1, 7 P.3d 655, 656 n. 1 (2000), rev. dismissed as improvidently allowed, 333 Or. 596, 44 P.3d 590 (2002) (procedural rulings in juvenile proceedings subject to abuse of discretion review).
"[A] decision that is clearly against reason and evidence may be, for that reason, outside the range of legally permissible outcomes." State ex rel Dept. of Human Services v. S.P. B., 218 Or.App. 97, 103, 178 P.3d 307 (2008). We conclude that this is such a case. Although ORS 419B.881(9) itself does not prescribe the factors material to the court's exercise of discretion in imposing a sanction for a discovery violation, we discern some guiding principles from the relevant context. For example, other provisions of ORS 419B.881 authorize the court to supervise discovery as necessary to ensure that it proceeds properly and expeditiously, ORS 419B.881(2)(b), and to deny, restrict, or defer disclosure upon a showing of good cause, ORS 419B.881(5). The legislature thus contemplated the court's continuing involvement in addressing discovery problems as they arise. That, in turn, indicates that the serial nature or "willfulness" of the party's actions in disregarding the discovery rules is at least one factor relevant to the court's determination as to the appropriate sanction to be imposed for that conduct. Cf. Pamplin v. Victoria, 319 Or. 429, 434, 877 P.2d 1196 (1994) (finding of willfulness, bad faith, or fault of similar degree on part of disobedient party is required for trial court to impose sanction of dismissal for failing to obey discovery order under ORCP 46(B)(2)(c)).
We have also recently observed that, in cases arising under the Juvenile Code, "the interests of the children will always be a relevant, even primary, consideration." State ex rel. Juv. Dept. v. D.J., 215 Or.App. 146, 154, 168 P.3d 798 (2007); see also ORS 419B.090 (recognizing that it is the policy of the State of Oregon to safeguard and protect children's rights to safety, stability, and freedom from abuse, exploitation, and neglect).
Application of those principles in this case leads us to conclude that the court abused its discretion in ordering preclusion of the state's evidence.[6] First, we are not persuaded on the record before us that there is any evidence of willfulness on the part of DHS to delay disclosure or otherwise circumvent the strictures of the statute. Rather, it appearsagain, on this recordthat the state first received notice that mother and father were alleging discovery violations on the morning of the hearing and no evidence of willful delay was presented. Moreover, the court failed to consider the interests of the children before making its decision to exclude the evidence, although the children's attorney counseled against it. Given the seriousness of the allegations in the petitions, and the nature of the evidence excluded which resulted in the state's inability to prove allegations of sexual abusethe court's decision to exclude the state's evidence was, *936 under the circumstances, unjustified by, and clearly against, reason and the evidence.
Reversed and remanded.
NOTES
[1] A separate petition was filed as to each child.
[2] Those allegations were first made in petitions filed in February 2007 (the 2007 petitions). However, in April of that year, DHS filed amended petitions deleting the sexual abuse and failure to protect allegations and alleging that the children were at risk of harm due to domestic violence and mother's and father's substance abuse. The juvenile court entered judgments of jurisdiction over the children based on mother's and father's admissions to those allegations; that jurisdiction continued at the time of the hearing in this case. Then, in April 2008, after R made disclosures to her therapist about the alleged abuse, DHS refiled the sexual abuse and failure to protect allegations in the petitions thatas amended on May 19, 2008are the subject of this appeal (the 2008 petitions).
[3] Although mother's attorney first stated that she was not aware of the existence of the DVD until she received Daniels's report on May 22, she later corrected the record, stating that she had received an assessment from DHS on April 4, 2008, indicating that the interview had been recorded. The court declined to revisit its ruling, however, holding that, regardless of the parties' knowledge of the DVD, the state did not make it available to the parties as required by the statute.
[4] A DHS representative indicated at the hearing that the delay in disclosing Daniels's report was the result of an oversight, which DHS corrected when it was discovered on May 19. She also represented that copies of Jones's therapy notes and Dixon's report were provided to the parties on May 19.
[5] Specifically, the court ruled:

"[R]egarding Detective Daniel[s], his report notes sat aroundthese were in the file, I'm finding that DHS had them in the file, and did not provide them through their error. It was these notes. They gave proof of the audio that it even existed. These notes were not provided until May 20th, well past the 30 day, and well past anytime in which the parties could be allowed to use this information, and to do any protective orders, or anything else * * *.
"* * * * *
"* * * Because that information was available to DHS, because DHS did not provide it, because it has been a pattern that they have not provided information in this case in a timely [manner], that it has been becoming apparent that it is a pattern of delay in these cases to try and get it extended out as far as possible to perhaps [ ] stockpile information, or for whatever reason that has gone on in these cases, from mythe hearings I've conducted, because of all those reasons I find that a continuance is not appropriate. * * * Okay there's a discovery violation. I'm finding that first by DHS. I'm finding that a continuance is not appropriate, because not only are the parties not asking for it, the parents, but also because to do so would be to encourage DHS to wait until the last minute, then provide information, and force the parents into a continuance, which DHS wants all along. That's not acceptable. I will not grant that.
"The other alternative and the inspection of material, is inappropriate in this particular case because although [father's attorney] had been able to see it today, [mother's attorney] hasn't, and allowing her to just see it today, and then expect her to be ready to go tomorrow, I'm not allowing them to get that to any expert they might [have] wanted to use, which [father's attorney] had testified she would have used. * * * I find that allowing time to inspect material is also not the appropriate remedy.
"This particular case, with this unfortunately grievous discovery violation by DHS, I'm finding that they have known since March and never provided it. I am excluding Detective Daniel[s] and his testimony. I'm excluding the DVD, and audio video, whatever part that might entail. Regarding Ms. Dixon and her notes. The notes are clear in Dr. Morale's report. II believe DHS when they said that they were unable to get Dr. Morale's report until recently, and I don't hear anyone asking that this report be kept out, so I'm not addressing that. I don't find thatthat DHS violated anything in trying to get Dr. Morale's report. They didn't get it until this week, but there is [a] notation in Dr. Morale's report that he was given the CATC in Ms. Dixon's notes prior to making his report, and he was given them by DHS, which meant that DHS had them. As a result, I'm also finding that to be a discovery violation by DHS, and I will for the same reasons listed above, be excluding Ms. Dixon's notes and her testimony * * *.
"* * * * *
"* * * The evidence regarding Ms. Jones is similar regarding Ms. Dixon, with the same points being reiterated that I made before * * *. The fact of the matter is that this was raised in hearing, all the information regarding any case notes for therapy, anything involving any disclosure made, any testimony regarding any of that was raised at prior hearings by [mother's attorney] and [father's attorney], and it was stated that they did not have that still, and needed that information, and it was responded by the State * * * thatthat information would be provided, so the State was on notice thatthat needed to be provided, and was planning to provide, but never did provide.
"* * * * *
"I have the same issues with the other remedies here. Actually yes, the same evidence here or the issues here that I would have [] on the other two, which is: an inspection of the material is not appropriate. It does not give the parties enough time to talk with an expert, and prepare an expert, or have anything else going on. * * * Granting a continuance is inappropriate because of the nature of the allegations here, the way the whole case has worked with the extension, the continuous dragging it out, which DHS has done, and then granted by this Court quite frankly, given time to see if something was going to come up because it was such a[] serious allegation, and they were given the time to [do] that, but they were also given the time to produce the information to the other side. I mean that's the way that you resolve cases anyway, so granting a continuance at this point is not appropriate, because it then encourages the very actions that are leadinggiving rise to the potential continuance, so it is inappropriate. Itit punishes the parents for actually exercising their rights under [ORS] 419B.881."
(Emphasis added.)
[6] We emphasize that we do not purport to hold that those are the only relevant considerations guiding the court's discretion under ORS 419B.881(9), only that they are among the factors that the court must consider, and that those factors are decisive here.