JAMES, J.
*584 Mother appeals a judgment terminating her parental rights to her two children on the grounds of extreme conduct and unfitness by conduct or condition. ORS 419B.502 ; ORS 419B.504. On appeal she raises three assignments of error. We reject the first and third without discussion and write only to address her second. There, she argues that the juvenile court erred by excluding the testimony of one of her expert witnesses, Poppleton, as a discovery sanction for failing to produce a report from Poppleton to the Department of Human Services (DHS) and the children's counsel. Mother argues that the failure to produce the report could not have been a discovery violation because there was no report to be discovered, and that she was not obligated to have her expert prepare such a report. DHS argues that mother did have an obligation to create and produce a report from Poppleton. Additionally, DHS argues that that mother's offer of proof in the juvenile court is insufficient to establish that Poppleton's testimony would have been admissible or that the exclusion of his testimony was prejudicial to her case. We agree with mother that the trial court erroneously believed that she had committed a discovery violation based on her failure to produce an expert report; however, we agree with DHS that, based on mother's offer of proof, the trial court did not commit reversible error in excluding Poppleton's testimony. Accordingly, we affirm.
For purposes of considering mother's second assignment of error, the relevant facts are procedural in nature. DHS began termination proceedings against mother under ORS 419B.502, on account of "extreme conduct"; and ORS 419B.504, on account of "mother's unfitness." The grounds for termination of mother's parental rights were partially due to disclosures mother's two children, E and G, made at a CARES facility regarding physical and sexual abuse. Mother believed those disclosures might have been the result of coaching by the children's father. Mother retained an expert witness, Poppleton, to testify about the coaching of witnesses.
On October 23, 2017, the children's counsel filed a motion in limine for an order "prohibiting mother from *585 presenting non-discovered evidence." Children's counsel argued that mother was violating ORS 419B.881 as of October 23, 2017, by not providing information as to the content or length of any witness's testimony with the exception of one draft report from a "professional witness." Children's counsel also argued that mother was "trying to force a postponement by purposefully engaging in discovery violations." That motion concluded by asking the juvenile court to order in limine that "[m]other may not offer either the oral testimony or the written material of any witness or material that has not been disclosed at this time."
A hearing on that motion was held on October 25, 2017.[1] The juvenile court proceeded to go through mother's witness list by individual and requested information regarding whether discoverable information had been generated by mother's witnesses. During that hearing, the following exchange between the juvenile court and mother's counsel occurred:
*429 "[THE COURT]: Was there a report generated from Dr. Poppleton? And-
"[COUNSEL]: No. Not yet, and it's not going to be for-at least, it's not ready yet. So I don't know when it's going to be ready.
"[THE COURT]: Was there a-
"[COUNSEL]: Request?
"[THE COURT]: Treading delicately, was there a request?
"[COUNSEL]: For a report?
"[THE COURT]: Yeah.
"[COUNSEL]: Oh, absolutely. Well, I don't know if he's going to have one in time. I've asked that he have one, of course. But-if he can, but he's working on a deadline, like the rest of these people.
"[THE COURT]: Okay."
*586 At the end of the hearing, the juvenile court said:
"Poppleton's time is a little problematic, so I'm going to give a little more leeway with that * * *."
Read in context, the statement is a reference to the fact that the juvenile court previously had imposed a deadline for discovery for the following day, at 5:00 p.m., Thursday, October 26. The juvenile court then issued an order, dated October 25, 2017, specifying that "Dr. Poppleton's report to be discovered as soon as the attorney receives the document."
Poppleton appeared for testimony on the eighth day of trial. Children's counsel objected to Poppleton's testimony, and in aid of that objection, asked Poppleton if he had been asked to prepare a report regarding the records he reviewed for mother. Poppleton testified that he had not been asked by mother to prepare a report. Poppleton also testified that he had been contacted by mother to do the records review about two and a half weeks prior to trial, and estimated the date was October 25.[2] Children's counsel explained his objections: At the October 25 hearing on the motion in limine , mother had not disclosed that Poppleton was asked to do a "records review" and instead, mother allowed opposing counsel and the judge to believe that a report was being prepared by Poppleton. Children's counsel accused that mother had "blind-sided" him. DHS's counsel referred to her notes and told the juvenile court she had noted in reference to Poppleton, "[n]o report yet, not sure when it will be ready, not sure he will have one in time." DHS's counsel informed the court that mother had "led us all to believe that there would be [a report] in time for today's proceedings."
Mother's counsel informed the juvenile court that she had anticipated that Poppleton would have a report, but had not anticipated that he would be called to testify "so quickly." She continued, "I asked Dr. Poppleton if he thought he could get this-get this done. I did not ask if he could complete a report. I anticipated that he would hopefully *587 have a report. * * * He said he could not get it done in time." After listening to a recording of the October 25 hearing, the juvenile court found that there were "representations made that there was a report on its way. A request was made * * * but there was an issue with the timeline." Children's attorney and DHS's attorney argued that they were prejudiced because they did not know how Poppleton was going to testify about the records he reviewed, which they believed violated the discovery schedule set on October 25, and they would have presented their case-in-chief differently had they known of Poppleton's testimony in advance. DHS's and children's counsel moved to exclude Poppleton's testimony.[3]
When asked by the juvenile court if there were any other available remedies for the perceived discovery violation, DHS's counsel suggested reopening its case but described that option as unfair to the children. The juvenile court made findings that mother had made a representation to the judge at the October 25 hearing that mother had requested *430 a report from all of mother's experts, and that mother had never disclosed the subject of Poppleton's testimony. The juvenile court also found that there "never was going to be a report." The juvenile court concluded that a discovery violation had been committed and granted the motion to exclude Poppleton's testimony.
Mother then made an offer of proof regarding Poppleton's testimony. The offer of proof, in full, provided:
"Dr. Poppleton would testify to the fact that the children's interview responses as found in the CARES report of August 16, 2016, should be looked at with an eye of skepticism. Dr. Poppleton would further testify that the interview did not appear to be done correctly, or rather, in a way that would decrease the reliability when looked at in the context of the development and memory of these children. And that the prior interview that had been done on January 20th, 2016, also should be looked at with skepticism due to the same problems."
Ultimately, the juvenile court terminated mother's parental rights to E and G.
*588 Mother now appeals and assigns error to the exclusion of Poppleton's testimony, arguing that she did not violate the statute governing discovery, ORS 419B.881, by not providing a written report of Poppleton's anticipated testimony because no such report existed and she had no obligation to see that one was created. DHS, as noted above, argues that the trial court did not commit any error, let alone reversible error.
"In reviewing discovery rulings, we are bound by the trial court's factual findings, provided that they are supported by evidence in the record. When no findings are made, and the evidence is such that the facts could be decided more than one way, we conclude that the facts were decided in a manner consistent with the court's ultimate conclusion. Whether those facts add up to a discovery violation is a question of law."
State v. White , 211 Or. App. 210, 219, 154 P.3d 124, adh'd to as clarified on recons. , 213 Or. App. 584, 162 P.3d 336, rev. den. , 343 Or. 224, 168 P.3d 1155 (2007) (internal citations omitted). We review the exclusion of a witness as a sanction for a discovery violation for abuse of discretion. State ex rel. Juv. Dept. v. G. A. K. , 225 Or. App. 477, 486, 201 P.3d 930, rev. den. , 346 Or. 157, 206 P.3d 191 (2009).
We first determine whether the facts here establish a discovery violation. Discovery obligations in juvenile proceedings such as here are governed by statute. G. A. K ., 225 Or. App. at 484-85, 201 P.3d 930. In this case, the relevant statute is ORS 419B.881, which in part, provides:
"(1) In all proceedings brought under ORS 419B.100 or 419B.500, each party, including the state, shall disclose to each other party * * * the following information and material within the possession or under the control of the party:
"(a) The names and addresses of all persons the party intends to call as witnesses at any stage of the hearing, together with any relevant written or recorded statements or memoranda of any oral statements of such persons;
" * * * * *
"(c) Any reports or statements of experts who will be called as witnesses, including the results of any physical or mental examinations and of comparisons or experiments that the party intends to offer in evidence at the hearing."
*589 Another subsection, ORS 419B.881(2)(b) permits the juvenile court to "supervise the exercise of discovery to the extent necessary to insure that it proceeds properly and expeditiously." However, that subsection must be read in context of the entire statute. First, ORS 419B.881(1) delineates four-and only four-categories of mandated discovery. Second, ORS 419B.881(6) provides, "[u]pon a showing of good cause, the court may at any time order that specified disclosure be denied, restricted or deferred or make such other order as is appropriate." Thus, reading the statute as a whole, while the juvenile court has authority to supervise and manage discovery, and can restrict discovery obligations, the court does not have authority to unilaterally create new *431 discovery obligations beyond those mandated by ORS 419B.881(1).
Turning to that statutory subsection, the plain text of ORS 419B.881(1)(c) requires that "[a]ny reports or statements of experts who will be called as witnesses" be disclosed to the other party or parties. While mother would have been obligated to disclose a report Poppleton created, the statute creates no obligation for mother to request that Poppleton create such a report.
In finding a discovery violation in this case, the juvenile court noted that "this is not how we do things here, all right? * * * You know, I don't want to use the word 'trial by ambush,' all right, because that's what we try to avoid. * * * Now this person has come in, and there was no representation as to what this person was going to do or say, all right? * * * There was some anticipation that there would be some report * * *." However, customary local practice is not a basis for a statutory discovery sanction. The court's authority to impose a discovery sanction derives from ORS 419B.881(10). That statutory subsection is, expectedly, tied to the discovery obligations created by ORS 419B.881(1). The statute does not authorize the imposition of a sanction for violation of a discovery obligation beyond those set forth in the statute. Thus, Poppleton could not be excluded as a witness, as a discovery sanction, for a failure to create a report, when creation of such a report is not obligated by the discovery statute.
*590 Although parties can voluntarily agree to discovery obligations beyond those imposed by statute, that is not what happened here. The juvenile court noted in its finding on the motion to exclude that "there was never going to be a report" from Poppleton. At the October 25 hearing, although mother informed the juvenile court that she had requested a report be generated, mother also informed the juvenile court that there would be a report from Poppleton only if he was able to create one. In fact, DHS's counsel noted that one might never exist, and wrote a note to herself regarding Poppleton: "no report yet, not sure when it will be ready, not sure he will have one in time." In short, the record shows that the court's discovery order was consistent with the statute: Mother was to produce any report from an expert as soon as the report was received; but, mother made no promise to the juvenile court that Poppleton would create a report for discovery and did not assume a voluntary discovery obligation beyond those imposed by ORS 419B.881. Accordingly, the failure to produce a nonexistent report was not itself a discovery violation, and the trial court erred in concluding otherwise.
However, the court's error in that regard does not automatically warrant reversal. The party seeking reversal based on the exclusion of evidence bears the burden of demonstrating that the error was not harmless. "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). DHS argues that mother's offer of proof regarding Poppleton's testimony does not establish that the exclusion of Poppleton's testimony was prejudicial to mother because the offer of proof showed that Poppleton's testimony was a commentary on the credibility of the witness. We agree. "[A] trial court does not have discretion to admit improper vouching or credibility testimony, whether offered by an expert or lay witness." State v. Black , 289 Or. App. 256, 261, 407 P.3d 992 (2017), rev. allowed , 363 Or. 104, 420 P.3d 619 (2018) ; see State v. Criswell , 282 Or. App. 146, 156, 386 P.3d 58 (2016) ("We review for legal error whether the trial court admitted impermissible vouching evidence.").
In Black , we held that an expert's testimony about how particular interviews failed to apply the appropriate *591 standards that "protect against untruths," as opposed to general testimony about what those standards are, is an inappropriate commentary on the evidence. Id. at 264, 407 P.3d 992. Such testimony does not permit the factfinder to determine for herself if those standards were applied in a particular interview at issue because such testimony is "a commonly understood way of signaling the expert's belief regarding whether a witness is telling the truth" and is not relevant for a *432 reason independent from making commentary on the evidence. Id. (quoting State v. Beauvais , 357 Or. 524, 543, 354 P.3d 680 (2015) ). We concluded in Black that
"the trial court did not err when it ruled that [the] defendant could not, through questioning of his expert, suggest to the jury that the child witnesses were not telling the truth because the state interviews of the child witnesses included leading, suggestive, and emotionally coercive questions and failed to explore alternative theories or determine whether the children were answering questions to obtain 'secondary gain.' The expert's responses to those questions would, 'on the whole,' be tantamount to providing the expert's view on whether the child witnesses were likely telling the truth in their interviews."
Id .
Here, all three sentences of mother's offer of proof identified impermissible commentary on the evidence: (1) "Dr. Poppleton would testify to the fact that the children's interview responses as found in the CARES report of August 16, 2016, should be looked at with an eye of skepticism"; (2) "that the interview did not appear to be done correctly, or rather, in a way that would decrease the reliability when looked at in the context of the development and memory of these children"; and (3) "that the prior interview that had been done on January 20th, 2016, also should be looked at with skepticism due to the same problems." Based on the offer of proof, Poppleton's testimony would have been inadmissible regardless of whether its exclusion was an appropriate remedy for a perceived discovery violation. Therefore, any error in excluding Poppleton's testimony was unlikely to affect the verdict and was harmless.
Affirmed.

The hearing on that date was conducted by Judge Rini. The trial was conducted by Judge Garcia.

During questioning by children's counsel in support of their motion to exclude the witness, Poppleton testified that his record review consisted of reviewing records in the case, such as CARES reports on at least one of the children, to see if any of the records indicated "things that might suggest or create false memories in children."

Mother requested a continuance to allow Poppleton to draft a report and avoid his exclusion as a witness.